

AO 442 (Rev. 11/11) Arrest Warrant

# UNITED STATES DISTRICT COURT
for the
Eastern District of Kentucky

| United States of America | ) |
|---|---|
| v. | ) Case No. 5:18-MJ-98-EBA |
| Ramie Dean Douglas | ) |
| Defendant | ) |

## ARREST WARRANT

To: Any authorized law enforcement officer

YOU ARE COMMANDED to arrest and bring before a United States magistrate judge without unnecessary delay
*(name of person to be arrested)* Ramie Dean Douglas,
who is accused of an offense or violation based on the following document filed with the court:

☐ Indictment ☐ Superseding Indictment ☐ Information ☐ Superseding Information ☑ Complaint
☐ Probation Violation Petition ☐ Supervised Release Violation Petition ☐ Violation Notice ☐ Order of the Court

This offense is briefly described as follows:

Beginning on or about August 13, 2018, and continuing until present, in Fayette County, in the Eastern District of Kentucky, and elsewhere, the defendant conspired with others to commit money laundering offenses in violation of 18 U.S.C. 1956 (a)(1)(A)(i) and 18 U.S.C. 1956(h).
Additionally, beginning on or about August 13, 2018, and continuing until present, in Fayette County, in the Eastern District of kentucky, and elsewhere, the defendant conspired with others to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance.

Date: 10/22/2018

Signed By:
Edward B. Atkins EBA
United States Magistrate Judge

City and state: Pikeville, KY

Edward B. Atkins, U.S. Magistrate Judge
*Printed name and title*

### Return

This warrant was received on *(date)* 11-8-18, and the person was arrested on *(date)* 11-10-18
at *(city and state)* Dulles, VA.

Date: 11-13-18

*Arresting officer's signature*

Andrew Harris, SA
*Printed name and title*

AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of Kentucky

EASTERN DISTRICT OF KENTUCKY
FILED
OCT 22 2018
EDWARD B. ATKINS
U.S. Magistrate Judge

United States of America
v.

Case No. 5:18-MJ-98-EBA

Rainie Dean Douglas

Defendant(s)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __06/13/2018 - present__ in the county of __Fayette__ in the __Eastern__ District of __Kentucky__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18/1956(a)(1)(A)(i)&(h) | Knowingly and intentionally conspiring with others to commit money laundering offenses |
| 21/846 & 21/841(a)(1) | Knowingly and intentionally conspiring with others to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance |

This criminal complaint is based on these facts:
See attached affidavit of SA Stout with the Drug Enforcement Administration

☒ Continued on the attached sheet.

_Tracy Stout, by C.P. Smith_
Complainant's signature _per Jep 2_

Tracy Stout, Special Agent with DEA
Printed name and title

Sworn to before me and signed in my presence.

Date: __10/22/2018__

Signed By:
Edward B. Atkins EBA
United States Magistrate Judge
Judge's signature

City and state: __Pikeville, Kentucky__

Edward B. Atkins, U.S. Magistrate Judge
Printed name and title

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

EASTERN DISTRICT OF KENTUCKY
FILED
OCT 22 2018
EDWARD B. ATKINS
U.S. Magistrate Judge

UNITED STATES OF AMERICA     PLAINTIFF

v.

**AFFIDAVIT**

RAMIE DEAN DOUGLAS     DEFENDANT

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

I, Tracy Stout, being duly sworn, do hereby depose and state:

### INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Special Agent with the United States Department of Justice, Drug Enforcement Administration (DEA), and have been such since graduating the DEA Academy in Quantico, VA in May 1998. I am currently assigned to the Lexington, Kentucky Resident Office. Previously, I was a Kansas City, Missouri, police officer from 1995 to 1998. I am authorized and have the responsibility to investigate and arrest persons for violations of federal law, involving the unlawful distribution of drugs, (21 U.S.C. § 841(a)(1)), attempt and conspiracy to commit the same (21 U.S.C. § 846), and money laundering (18 U.S.C. § 1956 and 1957). In my capacity as a DEA Special Agent, I am authorized to arrest persons for violations of federal law.

2. I have participated in hundreds of drug investigations, including clandestine laboratories; indoor and outdoor marijuana grow operations; international narcotics

1

smuggling operations; illegal Internet narcotics sales; narcotics-related money laundering; and possession and distribution of marijuana, cocaine, heroin, MDMA, methamphetamine, steroids, LSD, GHB, prescription pills, and other drugs. I have debriefed defendants, cooperating individuals, and witnesses who, from their personal knowledge, related how they amassed, spent, converted, transported, distributed, and concealed the proceeds of their unlawful drug trafficking. I have received training in narcotics investigations, indoor and outdoor marijuana grow operations, clandestine laboratories, money laundering, Internet investigations, and asset seizures.

3. This affidavit is based upon my personal knowledge and upon information reported to me by other Federal, State and Local Law Enforcement Officers during the course of their official duties. Over the past 20 years, through my own experience as well as through consultation with experienced narcotics investigators in DEA and other agencies, I have become familiar with the patterns of narcotics distributors and distribution networks and in narcotic related money laundering activities.

4. The information contained in this affidavit is not a complete account of everything known to me about this case. Rather, it contains the facts that I believe are sufficient to support a finding of probable cause.

5. The investigation to date indicates that there is probable cause to believe that beginning on or about August 13, 2018, and continuing through on or about October 16, 2018, in Fayette County, in the Eastern District of Kentucky, and elsewhere, Ramie

2

Dean Douglas did knowingly and intentionally conspire with others to commit money laundering offenses in violation of 18 U.S.C. § 1956, and did knowingly and intentionally conspire with others to distribute a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). The following facts support the finding of probable cause:

### PROBABLE CAUSE

6. In August of 2018, the Drug Enforcement Administration (DEA) San Diego Field Division and Lexington, Kentucky Resident Offices initiated an investigation into the Ramie Douglas (date of birth May 28, 1984) money laundering organization. According to a DEA San Diego Confidential Source (CS), Douglas is an international money launderer who offers money laundering services to drug trafficking organizations. The CS has provided information in the past that has proven to be reliable and accurate. The CS has only known Douglas by the name "Rick" and has never met Douglas in person.

7. Douglas was identified by DEA after submitting his telephone number to Customs and Border Protection (CBP) for inquiry and discovering the phone number was linked to Douglas in databases. Previously, the CS had provided a photograph of Douglas taken by the CS during a video call between the two. SA Darren Lee with DEA San Diego compared the photo obtained by CBP border crossing with the photograph of Douglas provided by the CS, and believes they depict the same individual. Douglas has a criminal history with arrests for driving under the influence (2013), possession of

marijuana (2014), and assault (2017); and arrests and convictions for burglary (2007) and criminal trespass (2008).

8. On August 13, 2018, in order to substantiate the claims made by the CS, DEA San Diego Special Agent (SA) Darron Lee, acting in an undercover capacity, contacted Douglas at telephone number (602) 668-0779 (Target Telephone) utilizing a text message through WhatsApp to discuss placement of funds located in Kentucky. The Target Telephone number was provided to SA Lee by the CS as a current phone number for Douglas. WhatsApp is a secure and encrypted mobile application utilized in conjunction with a cellular telephone to deliver secure encrypted voice and data communications without the fear of law enforcement interception. Currently, domestic U.S. law enforcement agencies have no technical capabilities to lawfully intercept WhatsApp communications. The recorded voice conversations referenced in this affidavit were recorded manually by law enforcement personnel. During this initial conversation, SA Lee represented to Douglas that $50,000.00 (United States Currency) was located in Lexington, Kentucky. On August 13, 2018, at approximately 1:14 p.m., Douglas sent a WhatsApp text to SA Lee to call him.

9. At approximately 1:22 p.m., SA Lee made a recorded WhatsApp voice call to Douglas. During the undercover telephone call, Douglas stated he would provide SA Lee with the name and account number for a bank account which SA Lee could pass to "co-conspirators" in Kentucky to deposit bulk cash directly into the account. SA Lee explained to Douglas he would expect Douglas to wire the money deposited into

4

Douglas's account to another bank account given by SA Lee. SA Lee also stated to Douglas that his "co-conspirator" in Kentucky would structure the money into the account. SA Lee asked Douglas if this would be acceptable and Douglas replied "cool". Douglas stated the bank account will probably be a business account, and either with Bank of America, U.S. Bank, or JP Morgan Chase. Douglas stated he would charge a 10% commission, but that this commission would be the same no matter the size of future transactions. SA Lee inquired if Douglas would be able to conduct similar transactions in Europe and Douglas stated he could. Lastly, Douglas asked SA Lee if they could meet in person. SA Lee agreed to meet with Douglas after the completion of the first transaction.

10. On August 16, 2018, at approximately 8:49 p.m., the CS, under the direction of SA Lee, placed a consensual recorded telephone call to Douglas at the Target Telephone utilizing WhatsApp. During the conversation, the CS stated, "They are going to confirm the guy who had the dope sells it, we will see the amount of the cash and we will let you know." Douglas replied, "Ok, no problem, like I said, after that, I want to introduce you to the advanced new method of how the cash is being transported." During this conversation, Douglas acknowledges that he is aware that the cash is from the sale of illegal drugs. Douglas also offers to show the CS a "new advanced method" to launder the money. The CS recognized the voice on this call as Douglas.

11. On August 17, 2018, at approximately 11:50 a.m., SA Lee, acting in an undercover capacity, contacted Ramie Douglas on a recorded WhatsApp voice call at

5

telephone number (602) 668-0779 (Target Telephone). SA Lee informed Douglas he received Douglas's text with the details of a bank account which SA Lee could utilize to place funds represented as drug proceeds in Kentucky. During previous WhatsApp text messages sent on August 17, 2018, Douglas gave SA Lee U.S. Bank Account # XXXXXXXX0486, under the account name Oluwafeyijinmi Lawanson, as the account into which bulk cash could be deposited. During the call, Douglas reiterated to SA Lee that a picture of the deposit slip should be sent to Douglas at the time of the deposit. In addition, Douglas informed SA Lee that any deposits made will be held for approximately 3 to 5 days prior to being disbursed. SA Lee recognized the voice of Douglas from this telephone call as the same voice on previously recorded calls between Douglas and the CS.

12. On August 22, 2108, Douglas sent SA Lee a new account to utilize. The account sent by Douglas is a Wells Fargo bank account named Chetan Used Cars Limited Liability Company, Account # XXXXXXX6608. Douglas explained in the text messages that the U.S. Bank Account previously provided was used in "some work so it has to rest". Based upon SA Lee's training and experience in money laundering investigations, this exchange is interpreted as meaning Douglas recently used the U.S. Bank Account in another money laundering transaction and does not want to utilize it again so soon in fears of having the account closed by the bank for Anti-Money Laundering concerns.

13. On August 24, 2018, at approximately 1:50 p.m., SA Lee, acting in an undercover capacity, placed a recorded telephone call to Douglas at the Target Telephone

6

utilizing WhatsApp. During the conversation, SA Lee told Douglas there were no Wells Fargo Bank locations in Kentucky in order to conduct the deposits. Douglas had previously sent SA Lee a text message with a Wells Fargo Bank account number to conduct the transaction. During the conversation, SA Lee informed Douglas that he checked with his people in Kentucky and there are no Wells Fargo Bank locations in Kentucky in order to conduct the deposit. SA Lee attempted to negotiate a future meeting with Douglas in the Lexington, Kentucky area in order to discuss the future movement of money with the people in Kentucky. Douglas stated he was in New York currently but agreed to check his schedule to see if he could make it. Also during the conversation, SA Lee discussed the movement of money from Europe with Douglas, which Douglas acknowledged. After the conclusion of the conversation, Douglas sent a WhatsApp text message to SA Lee that he would send a different account number in order to conduct the deposit the following week.

14. On August 28, 2018, in the Eastern District of Kentucky, a cell phone Ping Order was obtained for the Target Telephone (5:18-MJ-87-EBA). Utilizing geographical information from the Ping Order, along with telephone toll analysis of the Target Telephone, DEA suspected Douglas was residing at 53 West Palisade Avenue, Apartment 8, Englewood, New Jersey 07631 (Douglas Residence).

15. On August 28, 2018, the CS informed DEA that Douglas inquired with the CS if SA Lee, whom Douglas has been interacting with in undercover communications, would be able to sell cocaine to unidentified co-conspirators of Douglas. At

7

approximately 2:40 p.m. PST, SA Lee recorded a telephonic call with Douglas at the Target Telephone to discuss the potential sale of cocaine. During this call, Douglas explained he was acting as the broker for this deal. Douglas explained his co-conspirators were seeking to purchase five bags, which, based on SA Lee's training and experience, was understood to mean five kilograms of cocaine. SA Lee negotiated with Douglas that the purchase price would be $30,000 to $33,000 per kilogram of cocaine. Later on the same date, Douglas sent SA Lee a text message via WhatsApp to provide a bank account into which drug proceeds could be deposited. The text message sent by Douglas read "All Healthcare solution group LLC. Account #xxxxx1905. Chase bank" (sic). This account will herein be referred to as the "Healthcare Account".

16.     On August 29, 2018, SA Lee recorded a telephone call with Douglas using the Target Telephone. During this telephone call, Douglas stated that the negotiated price of the cocaine was not competitive and Douglas' co-conspirators were no longer interested in pursuing the purchase of this cocaine.

17.     On September 3, 2018, DEA New Jersey Field Division (NJFD) Agents assisting in the Douglas investigation observed an individual they believed to be Douglas exit the Douglas Residence. The Agents identified Douglas from comparing his appearance with government identification photographs of Douglas provided by SA Stout.

18.     On September 14, 2018, SA Lee conducted a recorded telephone call with Douglas at the Target Telephone, informing Douglas that $20,000 was ready for deposit

8

into the bank account Douglas previously provided to SA Lee on August 28, 2018. Douglas affirmed this by saying "the healthcare" account during the call. SA Lee informed Douglas that his organization had approximately $70,000 to deposit, but that only a $20,000 transaction would occur until Douglas returned the funds to SA Lee. Upon return of the funds to SA Lee, another $50,000 transaction with Douglas would transpire. During this call, Douglas maintained that he would charge a ten percent commission for facilitating this transaction.

19. On September 14, 2018, DEA LRO SA Troey Stout and IRS-CI SA Crystal Centers made three structured cash deposits into the Healthcare Account, in amounts of $8,000, $6,000, and $6,000. All three deposits were made in the greater Lexington, Kentucky area, totaling $20,000. This structuring activity was agreed upon by Douglas during a recorded telephone call on August 13, 2018 with SA Lee.

20. On September 17, 2018, an undercover DEA bank account maintained by the DEA San Diego Field Division Financial Investigations Group was credited with $18,000 in deposits. The information for the undercover DEA bank account was provided to Douglas by SA Lee in a WhatsApp text message on September 14, 2018. The $18,000 returned reflects a ten percent commission collected by Douglas for the $20,000 deposited into the Healthcare Account on September 14, 2018.

21. On September 17, 2018, SA Lee conducted a recorded telephone call with Douglas, asking which account SA Lee could utilize to conduct a follow-up money laundering transaction. Douglas did not want SA Lee to utilize the Healthcare Account

9

because Douglas stated the account has been too active and would attract law enforcement scrutiny. Douglas informed SA Lee he would provide him with a new bank account to utilize shortly.

22.     On September 18, 2018, SA Lee conducted a recorded telephone call with Douglas, after noticing Douglas attempted to contact SA Lee. Douglas immediately inquired with SA Lee about brokering the purchase of "one package", which SA Lee understood to mean one kilogram of cocaine. Douglas asked SA Lee how long it would take to get the cocaine to the New York area and what the price would be. SA Lee informed Douglas the price would be $30,000 for a kilogram of cocaine. Douglas stated that his co-conspirators would only pay $27,000.

23.     On September 18, 2018, SA Lee received a WhatsApp text message from Douglas identifying the bank account for SA Lee to utilize in another money laundering transaction with Douglas. The text message from Douglas read Startex investors inc....892827809" (sic). This account will herein be referred to as the "Startex Account".

24.     On September 18, 2018, DEA LRO SA Stout made an undercover deposit of $52,000 into the Startex Account at the JP Morgan Chase Bank Palomar Hills Branch in Lexington, Kentucky.

25.     On September 20, 2018, Douglas informed SA Lee that the return of $46,800 to SA Lee from the deposit made on September 18, 2018 would be delayed because JP Morgan Chase Bank had frozen the Startex Account due to suspicious

activity. However, on September 25, 2018, DEA discovered from bank records that the Startex Account was not under any adverse action by JP Morgan Chase Bank, and approximately $49,000 of the $52,000 deposit was still in the account. It was also discovered that Douglas was the account holder for the Startex Account.

26.     From September 28, 2018 to present, Douglas has continued to insist in multiple telephone calls and text messages to SA Lee and the CS that the funds deposited into the Startex Account are frozen by the bank. Douglas has continued to maintain that an unspecified co-conspirator named "Jay" is controlling the account and the failure of the funds to be returned to SA Lee is beyond his control. During these contacts, both SA Lee and the CS explained to Douglas that the funds belong to Mexican drug traffickers.

27.     On October 9, 2018, the CS recorded a telephone call with Douglas inquiring about the status of the funds due to SA Lee. During this telephone call, the CS informed Douglas that the CS's organization has completed its sale of a load of "cocaine" and that the CS's organization has over one million dollars that needs to be laundered. During this call, Douglas requested that the CS use code words, presumably to disguise their discussions about drug proceeds. In this same phone call, Douglas alluded to the fact that he worked at the airport.

## CONCLUSION

28.     I believe that the facts set forth above support that there is probable cause to believe that beginning on or about August 13, 2018, and continuing through on or about October 16, 2018, in Fayette County, in the Eastern District of Kentucky, and elsewhere,

Ramie Dean Douglas did knowingly and intentionally conspire with others to commit money laundering offenses in violation of 18 U.S.C. § 1956 and did knowingly and intentionally conspire with others to distribute a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 846 and 841(a)(1). There is also probable cause for the seizure of the JP Morgan Chase Bank account #892827809, as it is property involved in violations of 18 U.S.C. § 1956, and is therefore forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1).

I declare under the penalty of perjury that the above-statement is true and correct to the best of my knowledge, information, and belief.

Tracy Stout, by EBA with permission
Tracy Stout, Special Agent
Drug Enforcement Administration

Sworn to before me on _October 22_, 2018.

Signed By:
Edward B. Atkins  E BA
United States Magistrate Judge

12